908 A.2d 888

**KVAERNER METALS DIVISION OF KVAERNER U.S., INC. f/k/a Kvaerner Davy Division of Kvaerner U.S. Inc. f/k/a Davy International, A Division of Trafalgar House, Inc. and Kvaerner Songer, Inc., f/k/a Kvaerner Davy Songer, Inc. f/k/a Davy Songer, Inc., Together A Joint Venture; Kvaerner Metals Division of Kvaerner U.S., Inc. f/k/a Kvaerner Davy Division of Kvaerner U.S. Inc f/k/a Davy International, A Division of Trafalgar House, Inc., Kvaerner Songer, Inc., f/k/a Kvaerner Davy Songer, Inc. f/k/a Davy Songer, Inc.; Kvaerner Public Liability Company f/k/a Trafalgar House Public Liability Company; and Kvaerner ASA**

**v.**

**COMMERCIAL UNION INSURANCE COMPANY, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, Bethlehem Steel Corporation, Thyssen Still Otto Anlagentechnick GMBH, Successor-in-interest to Still Otto, GMBH.**

**Appeal of National Union Fire Insurance Company Of Pittsburgh, PA.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 2004.

Decided Oct. 25, 2006.

318

Michael J. Cawley, Deborah Malamut Minkoff, Gaele M. Barthold, Philadelphia, Jay M. Levin, Paoli, Leanne Alsen

Waldie, for Nat. Union Fire Ins. Co. of Pittsburgh, PA, appellant.

Michael Scott Olsan, Philadelphia, for Complex Ins. Claims Litigation Ass'n, appellant amicus curiae.

Joseph Leonard Luciana, III, Kenneth John Lund; Robert L. Byer, Philadelphia; John R. Dingess; Philip Marsh Hof, Eason, for Kvaerner Metals Div. of Kvaerner et al., appellees.

John Norig Ellison, Philadelphia, for United Policyholders, appellee amicus curiae.

James G. McLean, Pittsburgh, for Mechanical Contractors Ass'n of Western PA, Inc., appellee amicus curiae.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

In this insurance coverage dispute, Appellant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") appeals from the Superior Court's April 16, 2003 order, which reversed the trial court's order granting National Union's motion for summary judgment and remanded the case for additional proceedings to determine whether National Union was responsible for defending and indemnifying Appellee Kvaerner Metals Division of U.S., Inc., and other related companies (collectively, "Kvaerner") in an action brought by Bethlehem Steel Corporation ("Bethlehem"). Because we find that National Union has no duty under its policies to defend or indemnify Kvaerner in this case, the order of the Superior Court is reversed.

In June 1997, Bethlehem brought an action against Kvaerner asserting claims of breach of contract and breach of warranty. In its complaint, Bethlehem alleged that it entered into a contract with Kvaerner (the "Contract") pursuant to which Kvaerner agreed to design and construct a coke oven battery (the "Battery") for Bethlehem. According to Bethle-

hem, under the contract Kvaerner (1) agreed to build the Battery according to certain "plans and specifications that were made a part of the [Contract]," (2) warranted that its materials, equipment, and work would be free from defect, and (3) agreed to repair or replace any defective work or materials.

Bethlehem then contended that based on these facts, Kvaerner breached the above Contract terms because the Battery built by Kvaerner was "damaged" and "did not meet the contract specifications and warranties, or the applicable industry standards for construction . . ." Bethlehem further alleged that although it sent Kvaerner a "non-performance list" detailing the Battery's "damages and breaches," Kvaerner had failed to remedy the Battery's problems. Moreover, Bethlehem incorporated by reference the "damages and breaches" listed in the non-performance list, which enumerated numerous problems with the Battery, including the following:

(1) "100% of the ovens have cracked paver bricks"; (2) "[s]hifting brickwork has caused maximum deviation of centerlines of flue inspection ports"; (3) "[t]he larry car rails are introducing eccentric loads on the oven walls"; (4) "[d]ue to displacement of oven top brick and appurtenances (e.g. larry car rail chairs) the chairs are not directly above the centerline of the heating walls"; (5) "[t]he non-uniform shifting of brickwork in the oven roof resulted in a tilted configuration of the flue inspection ports"; (6) "[s]heared/open joints are present in the horizontal plane of roof brick and there are open joints in the vertical plane of roof brick," causing the migration of gas; (7) "[s]ections of seven lintel blocks [have subsided] and the outer blocks of two ovens are completely broken or shattered"; (8) the centerlines of the Battery's ovens are displaced, causing multiple door jams; (9) there are sheared/open joints between the silica and fireclay in the Battery; (10) the oven walls are not plumb and are distorted, causing them to experience compressive stress orders of a magnitude greater than design; (11) the oven walls are spalling; (12) certain braces deviate from the Contract design specifications; (13)

the spring adjustments are inadequate; (14) the tie rod housings are bowed; (15) the buckstays do not comply with the erection tolerances; and (16) water is penetrating the coke side bench.

Bethlehem's Non–Performance List, attached to May 15, 1997 Letter of Final Notification of Contract Non–Performance ("Non–Performance List"), Exh. 3 to Kvaerner's Motion for Reconsideration, at 1–14 (incorporated by reference in Bethlehem Complaint, Exh. A to Kvaerner Complaint, at 8–9). As a result of these damages to the Battery, Bethlehem asserted that Kvaerner was liable to it for either "the amount that it will cost to replace the Coke Oven Battery, or the difference in value between the defective Coke Oven Battery that it received and the Coke Oven Battery that [Kvaerner] warranted that it would deliver." *Id.* at 10.

■ After being served with Bethlehem's complaint, Kvaerner notified its insurer, National Union, of the suit, seeking defense and indemnity pursuant to two commercial general liability ("CGL") policies (collectively, the "Policies"). The first policy was a "claims made" policy for the period of September 30, 1995 to September 30, 1996 (the "1996 Policy") whereas the second policy was an "occurrence" policy for the period of April 1, 1997 to December 31, 1997 (the "1997 Policy").[1] National Union subsequently notified Kvaerner that it was disclaiming "coverage, defense, and indemnity for all allegations contained in [the] complaint" based on its conclusion that Bethlehem's claims did not fall within the

1. "An 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy." *See Consulting Engineers Inc., v. Ins. Co. of North America,* 710 A.2d 82, 85 (Pa.Super.1998), citing *St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 535, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978). Thus, even though the Policies contained the same general terms and conditions, they differed in the sense that the 1996 Policy only covered claims made between September 30, 1995 and September 30, 1996, and the 1997 Policy only covered acts that took place between April 1, 1997 and December 31, 1997. See 1996 Policy, National Union's Bf., at E2; 1997 Policy, *id.* at F2. In all other respects, the policies were identical; thus, for purposes of this appeal only a single analysis is necessary.

coverage provisions of the Policies. August 29, 1997 Letter from AIG Claim Services, Inc. to National Union, Exh. H of Index of Exhibits in Support of National Union's Motion for Summary Judgment, at 6.

Due to National Union's refusal to provide coverage, Kvaerner commenced the instant action in the Court of Common Pleas of Northampton County against National Union, seeking, *inter alia*, a declaratory judgment that National Union has a duty to defend and indemnify it pursuant to the Policies. National Union responded by filing an answer and a new matter, raising numerous affirmative defenses.[2] The parties engaged in discovery and in September 2000 National Union filed a motion for summary judgment, arguing that judgment must be entered in its favor because (1) the Policies only permitted coverage for allegations of "property damage" caused by an "occurrence," which was defined by the Policies as an accident, and Bethlehem had not alleged that the Battery was damaged by such an occurrence, and (2) even if Bethlehem alleged property damage caused by an occurrence, such damages were excluded under various "business risk/ work product" exclusions in the Policies.

Kvaerner filed a brief in opposition to National Union's motion for summary judgment as well as a cross-motion for summary judgment, asserting that National Union was responsible for defending and indemnifying it under the Policies because the Battery's damages were caused by an occurrence, which it deemed to be an unintended and unexpected event. According to Kvaerner, the Battery was damaged because of "longitudinal movement of the roof," which was caused be-

2. National Union claimed that it did not have a duty to defend or indemnify Kvaerner under the Policies for numerous reasons, including the following: (1) Bethlehem's claims against Kvaerner did not involve "property damage" arising from an "occurrence" as required by the Policies; (2) the Battery's damages did not take place during the effective time periods of the Policies; (3) the Battery's damages were a loss in progress or known loss when the Policies were issued; (4) the Battery's damages were excluded under different "business risk/work product" exclusions in the Policies; and (5) the Battery's damages were based on the rendering of or failure to render professional services and the Policies excluded coverage for such harm. *See* Answer of National Union with New Matter and New Matter Under Pa.R.C.P. 2252.

cause the bricks in the Battery's roof were "grouted" too early and because of heavy rains that occurred on October 31, 1994. Kvaerner's Bf. in Opposition to National Union's Motion for Summary Judgment, at 6, 24. In support of this claim, Kvaerner submitted a report from two experts in which they collectively opined that the damages to the Battery were caused from displacement and movement of the Battery's roof, which occurred because Kvaerner grouted the bricks earlier than had been scheduled. *See* Expert Report of Mr. Chuck Beechan and Dr. Clayton Liu, Exh. 8 to Appendix to Kvaerner's Responses in Opposition to the Motions for Summary Judgment of Commercial Union and National Union and in Support of its Cross–Motion for Summary Judgment. The experts further opined, however, that "the heavy 'monsoon-type' rain which occurred on October 31 could have damaged the joints in the roof." *Id.* at 3. Kvaerner then explained that because it did not intend or expect the early grouting of the Battery's bricks or the October 31 rains to cause the movement in the Battery's roof and thereby damage the Battery, the Battery's damages were caused by an "accident" for purposes of the Policies. See Kvaerner's Bf. in Opposition to National Union's Motion for Summary Judgment, at 23–24.

Kvaerner further asserted that the Policies included "Completed Operations Coverage," which, according to Kvaerner, meant that National Union would provide coverage for damages to Kvaerner's *completed* work product in certain circumstances, such as where the damages were the result of improper work performed by its subcontractor, Thyssen Still Otto Anlagentecnick ("Thyssen"). According to Kvaerner, it was entitled to coverage under the above provisions because the damages to the Battery occurred after it was completed by Kvaerner and were the result of Thyssen's decision to permit Kvaerner to grout the bricks on the Battery's roof earlier than scheduled. Finally, Kvaerner claimed that National Union was not entitled to summary judgment based on the exclusions relied upon by National Union because they were inapplicable.

On February 9, 2001, the trial court entered an opinion and order granting National Union's motion for summary judg-

ment and denying Kvaerner's cross-motion.[3] The trial court initially reviewed the Policies and agreed with National Union that it was only required to provide coverage for property damage caused by an occurrence or accident. The trial court then found, relying largely on the Superior Court's *en banc* decision in *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 454 Pa.Super. 374, 685 A.2d 581 (1996), that because the Policies were only meant to cover "accidental" damages National Union was not required to defend or indemnify an insured for breach of contract claims, presumably because damages resulting from a party's breach of contract could never be classified as "accidental."[4] With that premise in mind, the trial court examined Bethlehem's complaint to determine whether it was covered by the Policies.

After finding that Bethlehem was solely seeking damages for Kvaerner's breach of the Contract, rather than damages caused by an accident, the trial court concluded that Bethlehem's Complaint did not trigger coverage under the Policies. *See Kvaerner Metals Division of Kvaerner U.S., Inc., et al. v. Commercial Union Ins. Co., et al.*, Pa. C. Northampton, No. 1998–C–9531, at 11 (Feb. 9, 2001) ("The design specifications are duties imposed on Insured, not by public policy, but by the Contract; therefore, [Bethlehem's] allegations lie in breach of contract."). In spite of this conclusion, the trial court went on to consider Kvaerner's claim that it was entitled to coverage under the "Completed Operations Coverage" provisions in the Policies. While the trial court agreed with Kvaerner that these provisions provided coverage for property damage to an

**3.** Shortly after the trial court entered its decision, the Bethlehem lawsuit was settled and consequently, discontinued with prejudice.

**4.** The Superior Court in *Redevelopment Auth.* concluded that a CGL insurer was not responsible for defending the Redevelopment Authority of Cambria County for a breach of contract action filed against it by Barr Township because the CGL policy did not cover such actions. 685 A.2d at 589–90. The court explained:

Erie correctly asserts that it has no duty to defend or indemnify the Authority since the underlying suit arises out of a breach of contract which is not an accident or occurrence contemplated or covered by the provisions of the general liability insurance policy.

*Id.* at 589.

insured's completed work product when such damage was caused by the insured's subcontractor, it found that these provisions did not "obviate the [Policies'] requirement ... that the property damage [be caused by an accident]." *Id.* at 14. Thus, as it had already found that Bethlehem was not seeking accidental damages, the trial court concluded that National Union did not have to defend or indemnify Kvaerner pursuant to the "Completed Operations Coverage" provisions.[5]

Kvaerner appealed to the Superior Court, which entered an opinion and order on April 16, 2003, reversing the trial court's order and remanding the case back to that court for further proceedings. *See Kvaerner Metals Division of Kvaerner U.S., Inc., et al. v. Commercial Union Ins. Co., et al.,* 825 A.2d 641 (Pa.Super.2003). The Superior Court first found that it was unable to agree with the trial court's conclusion that National Union did not have a duty to defend or indemnify Kvaerner because Bethlehem had not alleged that the Battery's damages were caused by an accident. While the Superior Court acknowledged that case law from this Court indicated that an insurer's duty to defend and indemnify was dependant on "whether the third-party's **complaint** triggers coverage," *Kvaerner,* 825 A.2d at 650 (emphasis in original) (quoting *Mutual Benefit Ins. Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999)), the court found that it could look outside of Bethlehem's Complaint in the instant case because there was "**no** requirement in the [Policies] that a civil complaint be filed to trigger coverage...." *Id.* at 652 (emphasis in original). Therefore, looking beyond the allegations in Bethlehem's Complaint to the expert report submitted by Kvaerner with its cross-motion for summary judgment, see, *supra* pp. 324–25, 908 A.2d at pp. 892–93, the Superior Court observed that the Battery's damages may have been caused by various events, including the "torrential rains" on October 31, which would have clearly constituted an occurrence under the Policy.

**5.** As the trial court concluded that National Union was entitled to summary judgment because Bethlehem had not alleged that the Battery's damages were the result of an accident, it did not consider whether coverage was precluded based on the Policies' exclusions also relied on by National Union in its summary judgment motion.

*Kvaerner,* 825 A.2d at 654. In light of this uncertainty, the Superior Court found that there was a genuine issue of material fact regarding the causes of the Battery's damages and therefore concluded that "summary judgment was improperly entered against Kvaerner on the basis that there had been no 'occurrence' as required by the terms of the policy." *Id.* at 654–55.

The Superior Court next considered whether National Union was entitled to summary judgment based on the Policies' "business risk/work product" exclusions, which National Union also relied upon in its summary judgment motion. The Superior Court found that these exclusions may have precluded coverage for the Bethlehem lawsuit if an endorsement had not been added to the 1997 Policy, changing the effect of the exclusions. The court explained that while the "business risk/work product exclusions" generally barred coverage for damages caused by work performed by the insured or the insured's subcontractor, endorsement 16, which was added to the 1997 Policy in March 1997, altered the exclusions by permitting coverage for property damage caused by the insured's subcontractor. Given this endorsement, the Superior Court found that it could not conclude as a matter of law that the "business risk/work product" exclusions precluded coverage in the instant case until findings of fact were made regarding the amount of work performed by Kvaerner's subcontractors and whether any of that work caused the Battery's damages. Thus, the Superior Court remanded the case to the trial court to make the necessary findings of fact to determine whether any of the Battery's damages were covered because they were caused by the work of Kvaerner's subcontractors.

National Union subsequently filed a petition for allowance of appeal with this Court and we granted allocatur to consider whether the Superior Court erred by, *inter alia,* (1) looking beyond Bethlehem's Complaint to find that National Union may have a duty to defend Kvaerner, (2) finding that the Battery may have been damaged by an "occurrence," and (3) finding that the "business risk/work product" exclusions did

not exclude coverage for Bethlehem's claims.[6] We now conclude that the Superior Court did in fact err in looking beyond the allegations raised in Bethlehem's complaint to determine whether National Union had a duty to defend Kvaerner and in finding that the Battery's damages may have been the result of an "occurrence."

 In analyzing the order of the trial court that granted summary judgment to National Union, our scope of review is plenary. *Mountain Village v. Board of Supervisors,* 582 Pa. 605, 874 A.2d 1, 5 (2005). The standard of review is clear; we will reverse the order of the trial court only when the court committed an error of law or abused its discretion. *Mountain Village,* 874 A.2d at 5. Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.* at 5–6. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment. *Id.* at 6.

 It is well established that an insurer's duties under an insurance policy are triggered by the language of the

---

6. In our order granting allocatur, we also directed the parties to "address the appropriate test or inquiry in ascertaining whether an underlying claim sounds in contract or tort for purposes of insurance coverage." *Kvaerner Metals Div. of Kvaerner U.S., Inc., et al. v. Commercial Union Ins. Co., et al.,* 577 Pa. 667, 848 A.2d 925 (2004). We further consolidated the case with *Freestone v. New England Log Homes, Inc.,* 77 WAL 2003, in which the Superior Court directly considered this issue. *See Kvaerner Metals Div.,* 577 Pa. 667, 848 A.2d 925 (2003); *Freestone v. New England Log Homes, Inc.,* 577 Pa. 735, 848 A.2d 929 (2004); *Freestone v. New England Log Homes, Inc.,* 819 A.2d 550, 553–54 (Pa.Super.Ct.2003). The *Freestone* case, however, was dismissed prior to oral argument. Given these circumstances, we see no need to address this issue and shall therefore leave it for another day. *See Gulnac by Gulnac v. South Butler County School Dist.,* 526 Pa. 483, 587 A.2d 699, 701 (1991) (opining that this Court should only consider issues over which there "is a real controversy").

complaint against the insured.[7] In *Mutual Benefit Insurance Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999), we stated;

> A carrier's duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage.

*Id., citing General Accident Insurance Co. v. Allen,* 547 Pa. 693, 692 A.2d 1089, 1095 (1997). This principle has been long held in this Commonwealth as well as in other jurisdictions. In *Wilson v. Maryland Casualty Co.,* 377 Pa. 588, 105 A.2d 304, 307 (1954), we explained:

> [T]he rule everywhere is that the obligation of a casualty insurance company to defend an action brought against the insured is to be determined *solely* by the allegations of the complaint in the action ...

*Id.* (Emphasis supplied).

In this case, the Superior Court looked to information not contained in the underlying complaint in its determination that coverage might exist under the National Union policies. It claimed that it could do so because the Policies do not require that a Complaint be filed in order to trigger coverage. The Superior Court premised its coverage determination on reports submitted by two experts on behalf of Kvaerner stating that torrential rains may have caused the damages complained of by Bethlehem. The court held that these reports create uncertainty as to the cause of the damage and perhaps set forth an "occurrence" as required by the policies to trigger coverage, thus making summary judgment improper.

7. Kvaerner claims that National Union owed it a duty to defend as well as a duty to indemnify. As this Court has explained, a duty to defend is broader than the duty to indemnify. *General Accident Insurance Co. v. Allen,* 547 Pa. 693, 692 A.2d 1089, 1095 (1997). Further, the Superior Court has explained that because the duty to defend is broader, a finding that it is not present will also preclude a duty to indemnify. *Scopel v. Donegal Mutual Insurance Co.,* 698 A.2d 602, 605 (Pa.Super.1997). Although, however, the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage. *Allen,* 692 A.2d at 1095. Thus, if National Union does not have a duty to defend Kvaerner in this suit, neither does it have the duty to indemnify.

■■■■■ The Superior Court erred in looking beyond the allegations raised in Bethlehem's Complaint to determine whether National Union had a duty to defend Kvaerner and in finding that the Battery's damages may have been the result of an "occurrence." In doing so, it departed from the well-established precedent of this Court requiring that an insurer's duty to defend and indemnify be determined solely from the language of the complaint against the insured. *Haver*, 725 A.2d at 745; *Allen*, 692 A.2d at 1095; *Wilson*, 105 A.2d at 307. We find no reason to expand upon the well-reasoned and long-standing rule that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself.

Thus, we hold that the Superior Court's approach in looking beyond the Bethlehem complaint was in error. Instead, we will look to the language of the policies themselves to determine in which instances they will provide coverage, and then examine Bethlehem's complaint to determine whether the allegations set forth therein constitute the type of instances that will trigger coverage.

■■■■■ The interpretation of an insurance policy is a question of law that we will review *de novo*. *See 401 Fourth Street v. Investors Insurance Co.*, 583 Pa. 445, 879 A.2d 166, 170 (2005). Our primary goal in interpreting a policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's terms. *401 Fourth Street*, 879 A.2d at 170. "When the language of the policy is clear and unambiguous, [we must] give effect to that language." *Id.* Alternatively, when a provision in the policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Id.* With these principles in mind, we shall review the terms of the Policies to determine when they required National Union to defend Kvaerner.

The pertinent portions of the National Union CGL policies under which Kvaerner claims coverage state;

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages....

. . . .

b. This insurance applies to "bodily injury" or "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

1996 Policy, National Union's Bf., at E2; 1997 Policy, *id.* at F2 (emphasis added). The Policies defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." 1996 Policy, *id.* at E9–E10; 1997 Policy, *id.* at F9. An "occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." 1996 Policy, *id.* at E9; 1997 Policy, *id.* at F8. The Policies also defined a "suit" as "a civil proceeding in which damages because of 'bodily injury', 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies are alleged." 1996 Policy, *id.* at E10; 1997 Policy, *id.* at F9 (emphasis added).

Thus, National Union contracted to defend Kvaerner only when a "suit" or "proceeding" was brought against Kvaerner seeking or alleging damages for *inter alia,* property damage which is a result of an "occurrence." An "occurrence," in turn, is an accident. It is necessary, then, to examine whether the damage that is the impetus of this suit was caused by an accident, so as to constitute an occurrence under the policy. We must, then, examine what constitutes an accident under the policy.

The National Union CGL policies do not provide a definition for "accident." Words of common usage in an

insurance policy are construed according to their natural, plain, and ordinary sense. *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 557 Pa. 595, 735 A.2d 100, 108 (1999). We may consult the dictionary definition of a word to determine its ordinary usage. *Id.* Webster's II New College Dictionary 6 (2001) defines "accident" as "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally." The key term in the ordinary definition of "accident" is "unexpected." This implies a degree of fortuity that is not present in a claim for faulty workmanship.

Other courts have reached similar conclusions in the construction of the word 'accident' for purposes of insurance coverage. In *Snyder Heating v. Pennsylvania Manufacturers' Association Insurance Co.*, 715 A.2d 483 (Pa.Super.1998), the insured sought a declaratory judgment that insurer's CGL policy covered alleged liability for a breach of its agreement to maintain burners and boilers at a school's physical plant. The relevant language of the policy was the same as that in this case. *Snyder*, 715 A.2d at 485–86. The school allegedly suffered damage to its boilers due to insured's failure to maintain them properly.[8] The court held that there was no coverage under the language of the CGL policy because the complaint set forth solely claims for breach of contract. *Id.* at 487. The court explained, "[p]rovisions of a general liability policy provide coverage . . . if the insured work or product *actively malfunctions,* causing injury to an individual or damage to another's property." *Id.* (Emphasis original). Contractual claims of poor workmanship did not constitute the active malfunction needed to establish coverage under the policy.

In *McAllister v. Peerless Ins. Co.*, 124 N.H. 676, 474 A.2d 1033 (1984), the New Hampshire Supreme Court held that

---

8. The school's complaint specified the following alleged causes for its damages; (1) Failure to seal and close the boilers; (2) failure to properly test and inspect the boilers; (3) failure to timely inspect the boilers and report noted deficiencies; (4) failure to install new hardware as needed in the boilers; (5) failure to start the boilers in accordance with specifications; (6) failure to properly clean the boilers; (7) failure to properly secure the boiler doors; (8) failure to otherwise perform its obligations. *Snyder*, 715 A.2d at 486.

claims for poor workmanship were not covered by the insured landscaper's CGL policy. It stated, "[t]he *fortuity* implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship." *McAllister*, 474 A.2d at 1036. emphasis added. Thus, the Court found that because the only damage alleged was caused by faulty workmanship to the work product itself, there was not an "accident" as required to trigger coverage. *Id.* at 1035.

The recent decision of the Supreme Court of South Carolina, *L–J, Inc. v. Bituminous Fire and Marine Ins. Co.*, 366 S.C. 117, 621 S.E.2d 33 (2005), is instructive in our analysis. L–J Inc. contracted to build roads for a real estate developer. Within four years of completion the roads had deteriorated and the developer brought an action against L–J Inc. asserting breach of contract, breach of warranty, and negligence. L–J Inc. brought a declaratory judgment action against Bituminous, seeking coverage under its CGL policy. The trial court and intermediate appellate court found that coverage existed under the policy.

On appeal, the Supreme Court of South Carolina reversed. It held that the deterioration of the road could not constitute an "occurrence" under the terms of the policy. The Court explained that all of the allegations raised in the complaint against L–J Inc., including the negligence claims, were based on faulty workmanship. *L–J, Inc.*, 621 S.E.2d at 36. Faulty workmanship, the Court held, does not constitute an "accident" as required to establish an "occurrence" under the policies. Thus, coverage was denied.

The Court stated that a CGL policy may provide coverage where faulty workmanship caused bodily injury or damage to another property, but not in cases where faulty workmanship damages the work product alone. *Id.* at 36 n. 4. To permit coverage in such instances would convert CGL policies into performance bonds, which guarantee the work, rather than like an insurance policy, which is intended to insure against accidents. *Id.* at 36–37. See also *Hotel Roanoke Conference Center Commission v. Cincinnati Insurance Co.*, 303

F.Supp.2d. 784, 788 (W.D.Va.2004), ("[T]he word 'accident' as used in the definition of occurrence involves a degree of fortuity not present when the insured's defective performance of a contract causes injury to the insured's own work or product."); *Norwalk Ready Mixed Concrete v. Travelers Insurance Companies*, 246 F.3d 1132, 1137 (8th Cir.2001),(holding that defective workmanship cannot be characterized as an accident under Iowa law), *Auto–Owners Insurance Co. v. Home Pride Companies, Inc.*, 268 Neb. 528, 684 N.W.2d 571, 578 (2004) (A CGL policy does not provide coverage for faulty workmanship that damages only the resulting work product.) [9]

We hold that the definition of "accident" required to establish an "occurrence" under the policies cannot be satisfied by claims based upon faulty workmanship.[10] Such claims simply do not present the degree of fortuity contemplated by

9. While the majority of Courts have held that coverage under a CGL policy is not triggered by poor workmanship which causes injury to the work product itself, a minority of jurisdictions have held that faulty or negligent workmanship constitutes an accident so long as the insured did not intend for the damage to occur. *American Family Mutual Insurance Co. v. American Girl, Inc.*, 268 Wis.2d 16, 673 N.W.2d 65 (2004), *Fidelity & Deposit of Maryland v. Hartford Cas.*, 189 F.Supp.2d 1212 (D.Kan.2002), *Joe Banks Drywall v. Transcontinental Ins. Co.*, 753 So.2d 980 (La.App.2000), *Erie Insurance Exchange v. Colony Development Corp.*, 136 Ohio App.3d 406, 736 N.E.2d 941 (1999). We believe that this is an overly broad interpretation of accident, as the situation is rare indeed in which a contractor intends that the work product suffer injury. Because we believe that CGL policies are not the proper means to protect against such risks, we concur with the majority of Courts and decline to apply coverage in such cases.

10. The application and limitations of CGL policies were aptly explained in a seminal law review article by Roger C. Henderson;

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished and completed, will cause bodily injury or damage to property other than to the completed work itself and for which the insured by be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient work or product. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the

the ordinary definition of "accident" or its common judicial construction in this context. To hold otherwise would be to convert a policy for insurance into a performance bond. We are unwilling to do so, especially since such protections are already readily available for the protection of contractors.[11]

■ The underlying suit in this case avers only property damage from poor workmanship to the work product itself. In its complaint, Bethlehem alleged that the construction of the coke battery "did not meet the contract specifications and warranties, or the applicable industry standards for construction, and accordingly was in breach of the Contract and its warranties." Bethlehem Complaint at 8. Bethlehem incorporated by reference into its complaint a non-performance list, specifying the damages and breaches that it alleged. See Pages 322–23, 908 A.2d at 891, *supra.* The list details construction defects and a series of workmanship related irregularities. As faulty workmanship does not constitute an "accident" as required to set forth an occurrence under the CGL policies, we hold that National Union had no duty to defend or indemnify Kvaerner in the action brought by Bethlehem. Given this conclusion, it is not necessary for us to consider whether the business risk/work product exclusions also preclude coverage here. The Superior Court erred, therefore, in vacating the trial court's grant of summary judgment to National Union. As such, the Superior Court's order is reversed.

Justices CASTILLE, SAYLOR, EAKIN and BAER join this opinion.

Former Justice NIGRO and Justice NEWMAN did not participate in the decision of this case.

---

product or completed work is not that for which the damaged person bargained.
Insurance Protection for Products Liability and Completed Operations; What Every Lawyer Should Know, 50 Neb. L.Rev. 415, 441 (1971).

11. In this case Kvaerner was covered by a Builder's Risk Policy, providing coverage for property constructed by Kvaerner under the Contract, and a Professional Liability Policy, covering alleged negligent acts, errors, or omissions by Kvaerner or its subcontractors. Kvaerner has recovered monies under both policies.