J-A03034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COUNTRY POOLS & SPAS, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIE INSURANCE EXCHANGE; TY SCHOTT; AND CARISSA SCHOTT | : | |
| | : | No. 375 WDA 2023 |
| APPEAL OF: ERIE INSURANCE EXCHANGE | : | |

Appeal from the Order Entered February 24, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-18-005134

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:            **FILED: February 27, 2024**

Erie Insurance Exchange (Erie) appeals from the trial court's order denying its motion for summary judgment and compelling it to defend and indemnify its insured, Country Pools & Spas, Inc. (Country Pools), in an underlying lawsuit.  After careful review, we reverse and remand for the entry of summary judgment in Erie's favor.

On April 5, 2017, Ty and Carissa Schott (the Schotts) filed a civil complaint (Schott complaint) against Country Pools in the Court of Common Pleas of Allegheny County at No. GD-17-004843 (Schott action).  The Schott complaint set forth claims for unjust enrichment, violation of the Home Improvement Consumer Protection Act (HICPA), 73 P.S. § 517.1 *et seq.*, and

violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 *et seq*.

The Schott complaint alleged that, in July 2016, the Schotts sought a quote from Country Pools for the installation of a swimming pool in their back yard. Schott Complaint, 4/5/17, ¶ 5. Country Pools represented that it "could, and would, install an in-ground pool of the model and size" the Schotts selected. ***Id.*** ¶ 9. Country Pools quoted a price of $53,160, after which the Schotts signed a written agreement and paid a $26,580 deposit. ***Id.*** ¶¶ 13-17. Relying on Country Pools' instructions, the Schotts engaged a separate contractor to build a retaining wall for $18,916.67, engaged another contractor to install a fence for approximately $1,500, and disposed of their children's playground equipment in anticipation of the pool's installation. ***Id.*** ¶¶ 22-25, 31.

Before commencing the retaining wall project, the Schotts asked Country Pools whether permits were required from their municipality, Franklin Park Borough. ***Id.*** ¶ 26. Country Pools responded "that no permits would be necessary until installation of the swimming pool." ***Id.*** After completion of the retaining wall, the Schotts sought permits for the pool. ***Id.*** ¶ 27. At that time, they learned that Franklin Park's zoning regulations "would not permit construction of the swimming pool." ***Id.*** ¶ 28. The Schotts applied for a zoning variance, but were denied. ***Id.*** ¶ 29. The Schott complaint alleged Country Pools "never advised [the Schotts] to investigate local zoning laws

prior to advising [the Schotts] that a swimming pool could be installed, and [Country Pools] never investigated such laws itself prior to advising [the Schotts] that a swimming pool could be installed." *Id.* ¶ 33.

The Schott complaint alleged Country Pools refunded $20,429 of the Schotts' deposit but wrongfully refused to refund the remaining $6,151. *Id.* ¶ 30. It also alleged the Schotts suffered "an additional ascertainable loss" of $26,000 for costs incurred for excavation, the retaining wall, topsoil and grass seed, fencing, the variance application, and replacement of playground equipment. *Id.* ¶ 31.

The Schott complaint set forth three causes of action. Count one claimed unjust enrichment for the $6,151 portion of the deposit Country Pools refused to refund. *Id.* ¶¶ 34-38. Count two claimed Country Pools violated HICPA by not including its mandated provisions in the home improvement contract. *Id.* ¶¶ 39-49; *see also* 73 P.S. § 517.7(a).[1] Count three claimed Country Pools violated the UTPCPL "by knowingly misrepresenting that particular services are needed if they are not needed and by engaging in

---

[1] While statutory and treble damages are available for HICPA violations, the Schott complaint did not explain how the alleged HICPA violations caused the Schotts to suffer the approximately $32,000 in actual damages they alleged. *Id.* ¶¶ 39-49; *see* 73 P.S. §§ 517.10, 201-9.2.

fraudulent or deceptive conduct which causes a likelihood of misunderstanding or confusion."  Schott Complaint, 4/5/17, ¶ 54.[2]

Country Pools sought defense and indemnification for the Schott action under a commercial general liability insurance policy issued by Erie (the policy).  Erie denied coverage, asserting that the Schott complaint did not allege an "occurrence" as defined in the policy, nor did the Schotts' alleged damages constitute "property damage" as defined in the policy.  ***See*** Complaint, 4/19/18, Exhibit B.

The policy provides, in relevant part:

1.    Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result….

b.    **This insurance applies to "bodily injury" and "property damage" only if:**

**1)    The "bodily injury" or "property damage" is caused by an "occurrence"** that takes place in the "coverage territory"….

---

[2] Count three further alleged that, by definition, the alleged HICPA violations also constituted UTPCPL violations.  ***Id.*** ¶ 51 (citing 73 P.S. § 517.10).

Erie's Answer, New Matter, and Counterclaim, 6/10/19, Exhibit C (Policy) §

I.A.1 (emphasis added).

The policy includes the following relevant definitions:

**"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions....**

Erie's Answer, New Matter, and Counterclaim, 6/10/19, Exhibit D (Policy

Amendment) (emphasis added).

"Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

….

c.  "Property damage" does not include any loss, cost or expense to correct any defective, faulty or incorrect work performed by you or by any contractors or subcontractors working directly or indirectly on your behalf.

Policy § V.17; Policy Amendment (adding part c to definition).

The policy also defines "your product" and "your work" to include, *inter*

*alia*:

1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product" [or "your work"]; and

2)  The providing of or failure to provide warnings or instructions.

Policy §§ V.21-22. The policy identifies several exclusions, stating that the insurance does not apply to damage **to** "your product" and "your work." **See** Policy §§ I.A.2.k-n. It does not contain language specifically providing coverage for damage caused **by** "your product" or "your work."

After Erie denied coverage, Country Pools filed the instant action for a declaratory judgment requiring Erie to defend and indemnify it in the Schott action. Erie filed preliminary objections, which the trial court granted in part by ordering Country Pools to join the Schotts as defendants.[3] Erie thereafter filed an answer, new matter, and counterclaim requesting a declaration that it owed no coverage. Erie moved for judgment on the pleadings, which the trial court denied. After the parties engaged in discovery, Erie filed a motion for summary judgment.

On February 24, 2023, the trial court entered an order denying Erie's motion and compelling it to "defend and/or indemnify" Country Pools in the Schott action. The trial court determined that, under the policy, "[p]roperty damage includes injury to property and/or loss of use of that property that result from representations made by Country Pools." Trial Court Opinion, 5/17/23, at 2. It further determined that "the representation by Country Pools that led the Schotts to alter their realty, discard personal property[,] and spend money" constituted an "occurrence" under the policy. **Id.** at 2-3.

_____

[3] The Schotts do not appear to have participated in the substantive dispute before the trial court, nor do they participate in the instant appeal.

Erie filed a timely notice of appeal from the February 24, 2023, order. The trial court did not direct Erie to file a concise statement of matters complained of on appeal, but filed an opinion under Pa.R.A.P. 1925(a).

Erie presents two questions for our review:

> 1.     Did the trial court err as a matter of law when it denied Erie's motion for summary judgment and entered an order compelling Erie to defend and indemnify Country Pools & Spas, Inc., in the Schott action where the allegations set forth in the Schott[s'] complaint do not trigger the insuring agreement?
>
> 2.     Did the trial court err as a matter of law in entering an order compelling Erie to defend and indemnify Country Pools & Spas, Inc., where no cross-motion for summary judgment was filed?

Erie's Brief at 5.

We begin with Erie's first issue. Erie argues the policy provides coverage only for "property damage" caused by an "occurrence." Erie's Brief at 20-21. It maintains the Schott complaint failed to allege an "occurrence" or "property damage" as the policy defines those terms. *Id.* at 21-32. Erie argues the trial court erroneously relied on the policy's definitions of "your product" and "your work" (which include the insured's "representations"), maintaining those definitions apply only to **exclusions** and not to extensions of coverage. *Id.* at 32-35.

Country Pools counters that the policy provides coverage for the insured's representations, and argues its alleged representations to the Schotts, and the Schotts' reliance thereon, constitute a covered "occurrence." Country Pools' Brief at 6-7.

Our standard of review of an order granting or denying a motion for summary judgment is well settled:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Kozel v. Kozel**, 97 A.3d 767, 772 (Pa. Super. 2014) (quoting **Daley v. A.W. Chesterton, Inc.**, 37 A.3d 1175, 1179 (Pa. 2012)).

"Generally, the trial court will resolve a declaratory judgment action involving an insurance coverage dispute on summary judgment." **Kline v. Travelers Personal Sec. Ins. Com.**, 223 A.3d 677, 685 (Pa. Super. 2019) (quotation omitted). "The interpretation of the contractual language in an insurance policy is a pure issue of law which we review under a *de novo* standard." **Kramer v. Nationwide Property & Casualty Ins. Co.**, 271 A.3d 431, 435 n.1 (Pa. Super. 2021). "[W]e are not bound by the trial court's conclusions of law, but may reach our own conclusions." **Kline**, 223 A.3d at 686.

"[T]he well-reasoned and long-standing rule" provides "that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the [underlying] complaint itself." **Kvaerner Metals Div. of Kvaerner U.S., Inc.**

*v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006). Courts "look to the language of" insurance policies "to determine in which instances they will provide coverage, and then examine [the underlying] complaint to determine whether the allegations set forth therein constitute the type of instances that will trigger coverage." *Id.* at 896-97. "When the language of the policy is clear and unambiguous, we must give effect to that language." *Id.* at 897 (quotation and brackets omitted). "Alternatively, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Id.* (quotation omitted).

Our examination of the relevant policy language discloses that it provides coverage only for "property damage" caused by an "occurrence." Policy § I.A.1.[4] "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions…." Policy Amendment. This is standard language in commercial general liability policies, and our Courts have interpreted substantially identical language on many occasions. *See, e.g., Kvaerner*, 908 A.2d at 897; *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 289 (Pa. 2007); *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co.*, 941 A.2d 706, 711 (Pa. Super. 2007);

---

[4] It is undisputed that the Schott action does not implicate the policy's "bodily injury" coverage.

*Kiely v. Philadelphia Contributionship Ins. Co.*, 206 A.3d 1140, 1143 (Pa. Super. 2019).

In *Kvaerner*, where an "occurrence" was identically defined as "an accident," our Supreme Court noted the relevant inquiry was to "examine what constitutes an accident under the policy." *Kvaerner*, 908 A.2d at 897. With "accident" undefined in the policy, the *Kvaerner* Court observed:

> Words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense. *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999). We may consult the dictionary definition of a word to determine its ordinary usage. *Id.* Webster's II New College Dictionary 6 (2001) defines "accident" as "[a]n unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally." The key term in the ordinary definition of "accident" is "unexpected." This implies a degree of fortuity that is not present in a claim for faulty workmanship.

*Id.* at 897-98 (internal citation modified).

Interpreting the same policy language, this Court has held that "[i]ntentional acts are not 'occurrences.'" *Sclabassi v. Nationwide Mut. Fire Ins. Co.*, 789 A.2d 699, 703 (Pa. Super. 2001). We have also held that "a breach of contract… is not an accident or occurrence contemplated or covered by the provisions of a general liability insurance policy." *Redevelopment Auth. of Cambria County v. Int'l Ins. Co.*, 685 A.2d 581, 589 (Pa. Super. 1996). "The purpose and intent of such an insurance policy is to protect the insured from liability for essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking." *Id.*

- 10 -

We now turn to the Schott complaint and consider whether it alleged an "occurrence." Erie argues the Schotts' claim for unjust enrichment, relating to Country Pools' alleged refusal to refund part of their deposit, cannot constitute an occurrence, because it is not accidental and is contractual in nature. Erie's Brief at 21-22. Erie further argues the Schotts' claim for violations of HICPA involves intentional rather than accidental conduct. *Id.* at 26-27. We agree.[5]

Initially, we agree with Erie's argument that both Country Pools and the trial court improperly relied on the policy's definitions of "your work" and "your product" to bolster the conclusion that Country Pools' representations constitute a covered "occurrence." *See* Erie's Brief at 34-35; Erie's Reply Brief at 1. *Without citing to the policy*, Country Pools asserts that the "policy specifically provides coverage for 'representations' or 'instructions' that [Country Pools] may make that turn out to be erroneous, resulting in" the Schotts' losses "as a result of their reliance" on those representations or instructions. Country Pools' Brief at 7. Our review discloses nothing in the policy to support this assertion. The terms "your product" and "your work," which the policy defines to include the insured's "representations" and

---

[5] Country Pools does not argue, and the trial court did not conclude, that coverage was triggered by the unjust enrichment or HICPA claims. The dispute centers on the Schotts' UTPCPL claim and Country Pools' alleged misrepresentation that a pool could be installed when local zoning regulations barred such installation.

"instructions," are used only in provisions **excluding** coverage. **See** Policy §§ V.21-22, I.A.2.k-n. They are not used in the provisions extending coverage and have no bearing on the meaning of "occurrence."

Nevertheless, the trial court cited the definitions of "your product" and "your work" in concluding that "the representation by Country Pools that led the Schotts to alter their realty, discard personal property[,] and spend money" constituted an "occurrence." Trial Court Opinion, 5/17/23, at 2-3 (citing Policy §§ V.21-22). The court improperly relied on those definitions to support its determination that "[p]roperty damage includes injury to property and/or loss of use of that property that result from representations made by Country Pools." **Id.** at 2. Our review discloses no connection between the policy's definitions of "your product" or "your work" and its provisions extending coverage. Those definitions are simply not relevant to the inquiry of whether Country Pools' representations constitute an "occurrence."

Our review further discloses inconsistencies in the Schott complaint regarding the representations made by Country Pools. In its initial factual statement, the Schott complaint alleged that Country Pools "never advised [the Schotts] to investigate local zoning laws prior to advising [the Schotts] that a swimming pool could be installed, and [Country Pools] never investigated such laws itself prior to advising [the Schotts] that a swimming pool could be installed." Schott Complaint, 4/5/17, ¶ 33. Thus, the Schotts appear to claim Country Pools' representation that a pool could be installed

constituted a negligent misrepresentation, *i.e.*, "made under circumstances in which the misrepresenter ought to have known its falsity…." ***Bilt–Rite Contractors, Inc. v. The Architectural Studio***, 866 A.2d 270, 277 (Pa. 2005) (detailing the elements of negligent misrepresentation). However, the Schott complaint did not set forth a cause of action for negligent misrepresentation.

Rather, it presented the alleged misrepresentation in its UTPCPL claim. The Schotts alleged Country Pools violated UTPCPL "by knowingly misrepresenting that particular services are needed if they are not needed and by engaging in fraudulent or deceptive conduct which causes a likelihood of misunderstanding or confusion." Schott Complaint, 4/5/17, ¶ 54 (citing 73 P.S. § 201-2). In this averment, the Schotts characterize Country Pools' representation as an intentional, indeed fraudulent, misrepresentation. In light of the policy's definition of "occurrence" as "an accident," and our precedent holding that "[i]ntentional acts are not 'occurrences,'" ***Sclabassi***, 789 A.2d at 703, the alleged intentional misrepresentation by Country Pools cannot constitute an occurrence.[6]

Alternatively, even if the Schotts had alleged negligent misrepresentation, our precedent points to the same conclusion.

_____

[6] Additionally, the policy contains a specific exclusion for intentional injury, stating, "This insurance does not apply to … 'property damage' expected or intended from the standpoint of the insured." Policy § I.A.2.a.

> Negligent misrepresentation requires proof of: 1) a misrepresentation of a material fact; 2) made under circumstances in which the misrepresenter ought to have known its falsity; 3) with an intent to induce another to act on it; and 4) which results in injury to a party acting in justifiable reliance on the misrepresentation.

*Erie Ins. Exch. v. Maier*, 963 A.2d 907, 910 (Pa. Super. 2008) (citation omitted). In *Maier*, we held that negligent misrepresentation is not an "occurrence":

> The elements of the claim [of negligent misrepresentation] … demonstrate that while a specific knowledge of the falsity of the claim is not a requirement there is an intent for another person to rely on the misrepresentation. Here, in the underlying claim, the complaint alleges that there was specific knowledge of the falsity of the statement. This makes the claim as found in the complaint more akin to intentional misrepresentation. Even so, the claim of negligent misrepresentation still contains an element of specific intent which takes the claim outside the realm of the unintentional.

*Id.* at 910 (footnote omitted). Relying on the Supreme Court's observation in *Kvaerner* that an accident "is something that occurs unexpectedly or unintentionally," this Court noted "an occurrence is generally an unintended event." *Id.* at 909 (quoting *Kvaerner* at 898). Consequently, under the terms of the policy, we concluded the insured's negligent misrepresentation "was not an 'occurrence' or accident." *Id.* We reach the same conclusion here.

Our review of the Schott complaint, in light of our precedent, discloses no allegations of an "occurrence" as defined in the policy. Country Pools' argument is largely based on the language of the policy's exclusions. *See*

Country Pools' Brief at 6-9. Further, Country Pools does not distinguish the instant case from our prior holdings that intentional and negligent misrepresentations are not occurrences or accidents. *Id.*; *see Maier* at 909-10. Applying our holding in *Maier*, we conclude that Country Pools' representations are not an "occurrence" under the policy.

Accordingly, because the policy provides no coverage for the Schott action, Erie is entitled to summary judgment.[7]

Based on the foregoing, we vacate the trial court's February 24, 2023, order and remand the case for the entry of summary judgment in Erie's favor.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/27/2024

_____

[7] Based on this disposition, we need not address whether the Schott complaint also alleged "property damage" as defined in the policy, nor whether the trial court erred in granting relief to Country Pools without its filing a cross-motion for summary judgment. We note, however, that Country Pools fails to advance any argument that the Schotts' alleged damages meet the policy's definition of "property damage." *See generally* Country Pools' Brief. Similarly, the trial court's opinion contains no analysis of this issue. *See generally* Trial Court Opinion, 5/17/23.

- 15 -