J-A12038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NICHOLAS REINHART AND DENISE REINHART, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ERIE INSURANCE COMPANY, | |
| Appellee | No. 2034 MDA 2014 |

Appeal from the Order dated August 26, 2014,
in the Court of Common Pleas of Lancaster County,
Civil Division, at No(s): CI-12-04806

BEFORE:  BOWES, DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED APRIL 30, 2015**

Insured homeowners Nicholas and Denise Reinhart, ("Mr. Reinhart," "Mrs. Reinhart," or collectively "Appellants"), appeal from the trial court's order granting summary judgment in favor of Appellants' insurer, Erie Insurance Company, ("Erie"), regarding Count I of Appellants' complaint for breach of contract.  The trial court determined that Erie was entitled to summary relief because Appellants failed to file their breach of contract claim against Erie within the one-year statute of limitations set forth in Erie's insurance policy.  Appellants' remaining bad faith claim against Erie under Count II of their complaint remains pending.  Recognizing, *inter alia*, that "deferring appellate review on the adjudicated breach of contract claim would potentially harm [Appellants'] ability to pursue their unadjudicated bad faith claim," the trial court, by order dated October 6, 2014, granted

Appellants' motion for a determination of finality pursuant to Pa.R.A.P. 341(c), allowing Appellants to pursue an immediate direct appeal to the trial court's determination regarding Count I of Appellants' complaint for breach of contract.[1]

Appellants present the following issues for our consideration:

[I.] DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT TO ERIE ON THE [APPELLANTS'] BREACH OF CONTRACT CLAIM?

[II.] DID THE TRIAL COURT MISINTERPRET AND MISAPPLY THE RELEVANT INSURANCE POLICY PROVISIONS?

[III.] COULD A REASONABLE JUROR HAVE FOUND THAT ERIE'S CONDUCT, IN ADVISING [APPELLANTS] THAT "THE RIGHTS OF THE INSURED ... UNDER THE POLICY AND APPLICABLE LAW, ARE FULLY RESERVED AND ANY SUCH ACTION TAKEN DURING THE INVESTIGATION AND EVALUATION OF THIS MATTER SHOULD NOT BE DEEMED A WAIVER OR ESTOPPEL TO ASSERT ANY SUCH RIGHT," AND OTHER CONDUCT, EXCUSED [APPELLANTS] FROM ANY REQUIREMENT OF SUING ERIE WITHIN ONE YEAR OF THE DATE OF THE FIRE?

[IV.] DID THE TRIAL COURT ERR BY HOLDING THAT THE SUBJECT INSURANCE POLICY REQUIRED [APPELLANTS] TO FILE SUIT AGAINST ERIE WITHIN ONE YEAR OF THE DATE OF THE FIRE?

Appellants' Brief at 4.

---

[1] On October 17, 2014, "out of an abundance of caution," Appellants filed with our Court a petition for our review pursuant to Pa.R.A.P. 1311. Appellants' Petition for Review Pursuant to the Note to Pennsylvania Rule of Appellate Procedure 1311, 10/17/14, at 5. On December 4, 2014, by *per curiam* order, we granted Appellants' petition for review pursuant to Pa.R.A.P. 1311.

We recognize:

> Our scope of review … [of summary judgment orders] … is plenary.  We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact.  We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.  Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.
>
> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action.  Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.  Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury.  Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions.  The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Alexander v. City of Meadville,* 61 A.3d 218, 221 (Pa. Super. 2012)

(internal citations omitted).

Further, we acknowledge:

> "The interpretation of an insurance contract is a question of law, our standard of review is *de novo,* thus, we need not defer to the findings of the lower tribunals.  Our scope of review, to the extent necessary to resolve the legal question before us, is plenary."  *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 331, 908 A.2d 888, 893 (2006).  Our purpose in interpreting insurance contracts is

to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. *401 Fourth Street, Inc. v. Investors Ins. Group,* 583 Pa. 445, 454, 879 A.2d 166, 171 (2005). "When the language of the policy is clear and unambiguous, we must give effect to that language." *Kvaerner,* 589 Pa. at 331, 908 A.2d at 897. However, "when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage." *Id.*

***Donegal Mut. Ins. Co. v. Baumhammers,*** 938 A.2d 286, 290 (Pa. 2007).

Moreover,

Absent issues pertaining to the discovery rule, "[w]hether the statute of limitations has run on a claim is generally a question of law for the trial judge." *Devine v. Hutt,* 863 A.2d 1160, 1167 (Pa. Super. 2004). Which statute of limitations applies to a cause of action is also a matter of law for the court to determine. *Packer Soc. Hill Travel Agency, Inc. v. Presbyterian University of Pennsylvania Medical Center,* 430 Pa.Super. 625, 635 A.2d 649, 651 (1993). Additionally, the interpretation and "application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." *Commonwealth v. Williams,* 871 A.2d 254, 262 (Pa. Super. 2005); *Weiner v. Fisher,* 871 A.2d 1283, 1285 (Pa. Super. 2005).

***Wilson v. Transport Ins. Co.,*** 889 A.2d 563, 570 (Pa. Super. 2005).

Mindful of the foregoing precepts, we carefully examined the certified record, Appellants' arguments, and prevailing jurisprudence, and found Appellants' claims of trial court error to be without merit. On August 26, 2014, the Honorable David L. Ashworth issued a well-reasoned, well-written, and sound opinion, which thoroughly addresses Appellants' claims regarding the trial court's grant of summary judgment in Erie's favor as to Count I of Appellants' complaint, the trial court's interpretation of Erie's insurance

policy, and Appellants' argument that Erie was estopped from invoking the statute of limitations defense. The trial court's rationale is cogently expressed, citing applicable case law along with the record, such that further analysis and commentary by this Court would be redundant. We therefore adopt as our own the trial court's August 26, 2014 opinion, and affirm the trial court's order granting summary judgment in favor of Erie as to Count I of Appellants' complaint regarding breach of contract. We do not reach Appellants' remaining unadjudicated bad faith claim under Count II of their complaint, which is not before us and regarding which we make no disposition.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/30/2015

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

NICHOLAS and DENISE REINHART  :

v.  :  No. CI-12-04806

ERIE INSURANCE EXCHANGE  :

OPINION

BY:  ASHWORTH, J., AUGUST 26, 2014

This is an action for insurance coverage and insurance bad faith. At all relevant times, Plaintiffs Nicholas and Denise Reinhart were the owners of the residence located at 450 Hertzog Valley Road, Denver, Lancaster County (the Residence). (Complaint at ¶ 1.) Plaintiffs' interest in the Residence and its contents was insured by Defendant Erie Insurance Exchange (Erie). (Id. at ¶ 3.) On April 9, 2010, the Residence and its contents were destroyed by a fire. (Id. at ¶ 6.)

Plaintiffs initiated this action on April 5, 2012, by Complaint. Pending before the Court is Erie's motion for summary judgment in which Erie contends that Plaintiffs' breach of insurance contract claim is barred by the one-year suit limitation clause contained in their insurance policy. For the reasons set forth below, Defendant's motion will be granted.

I.    Procedural and Factual Background

Plaintiffs' Residence was insured under an Erie Ultracover Policy Number Q60 1009442 H (the Policy). (Complaint at ¶ 3; *see* Defendant's Motion for Summary

Judgment, Exhibit "A.") The Policy includes the following limitation on filing suit:

> (15) SUIT AGAINST US
> We may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year (Maryland – three years) after the loss or damage occurs.

(*See* Defendant's Motion for Summary Judgment, Exhibit "A," Subsection 15, p.14.)

On April 9, 2010, while this Erie Policy was in full force and effect, a fire destroyed Plaintiffs' Property and its contents. (Complaint at ¶ 6.) On April 12, 2010, Michael Potosky, a property claims specialist with Erie, sent Plaintiffs a Reservation of Rights letter ("April 12 Letter") advising that Erie was investigating the loss.[1] (*See* Defendant's Motion for Summary Judgment, Exhibit "D.") In the letter, Mr. Potosky further advised Plaintiffs of the one-year suit limitation by quoting the following language from the Policy: "Suit must be brought within one year (Maryland – three years) after the loss or damage occurs." (Id. at 4.) Mr. Potosky sent a similar certified letter to Plaintiffs on April 14, 2010 ("April 14 Letter"), advising Plaintiffs that Erie was investigating the loss, and restating the need to comply with the suit limitations terms of the Policy:

> Finally we would remind you that per the (15) SUIT AGAINST US provision of the policy we may not be sued unless there is full compliance with all the terms of this policy. Suit must be brought within one year (Maryland – three years) after the loss or damage occurs.

(*See* Defendant's Motion for Summary Judgment, Exhibit "E.")[2]

---

[1] On September 24, 2013, Erie served on Plaintiffs Request for Admissions, which were answered on October 22, 2013. In the answers, Plaintiffs acknowledge receiving a copy of the April 12, 2010, reservation of rights letter from Erie. (*See* Defendant's Motion for Summary Judgment, Exhibit "C" at ¶ 12.)

[2] In their Answers to Request for Admissions, Plaintiffs also admitted receiving a copy of the April 14, 2010, reservation of rights letter from Erie. (*See* Defendant's Motion for Summary Judgment, Exhibit "C" at ¶ 15.)

2

Thereafter, Plaintiffs retained Young Adjustment Company, Inc. (Young Adjustment) to serve as their public adjuster and agent in recovering for their loss. On June 30, 2010, and July 1, 2010, Ed Williamson of Young Adjustment sent Erie separate sworn Proofs of Loss for Mr. and Mrs. Reinhart. On July 12, 2010, Mr. Potosky sent a reply to Mr. Williamson ("July 12 Letter"), with a copy to Plaintiffs. (See Plaintiffs' Brief contra Erie's Motion, Exhibit "E.") Therein, Mr. Potosky advised as follows:

> Please allow this letter to acknowledge receipt of the Proof of Loss that was submitted by Nicholas Reinhart on June 30, 2010 and the Proof of Loss that was submitted by Denise Reinhart on July 1, 2010. At this time, Erie Insurance Exchange is not in a position to either accept or reject your Proofs of Loss because we are presently reviewing the coverage afforded under the policy and are comparing the facts, as far as are known to us, with the provisions of the insurance policy. Upon completion of this review and any additional investigation needed, we will advise you as to the actions to be taken by Erie.

> Please be advised that the investigation and evaluation undertaken by Erie is being conducted under a full reservation of its rights. The phrase 'reservation of rights' means that the rights of the insured and those of Erie, under the policy and applicable law, are fully reserved and any such action taken during the investigation and evaluation of this matter should not be deemed a waiver or estoppel to assert any such right.

> Thank you for your assistance and cooperation. Waiving none, but instead reserving to Erie Insurance Exchange all of its rights under the policy of insurance and under the law.

(Id.)

On October 26, 2011, Erie, through its counsel, took Denise Reinhart's examination under oath (EUO) pursuant to a Policy provision allowing Erie to take the EUO of its insured. (Complaint at ¶ 9.) Following Mrs. Reinhart's EUO, suit was filed

on April 5, 2012, allegedly in order to preserve the statute of limitations on Plaintiffs' bad faith claim.[3] (*See* Plaintiffs' Brief contra Erie's Motion at 6.) Erie took Nicholas Reinhart's EUO on April 12, 2012, one week after the Complaint was filed in this matter. (Id., Exhibit "F" (Affidavit of Nicholas Reinhart) at ¶ 9; *see also* Complaint at ¶ 9.) To date, Erie has not sent a denial letter stating that Erie is denying coverage for the Reinharts' claim. (Id., Exhibit "F" at ¶ 10; *see also* Complaint at ¶ 11.)

At no time prior to April 8, 2011, the date one year after the date of loss, did Plaintiffs request or receive an extension of the suit limitation period; nor did they file suit. Rather, Plaintiffs' suit against Erie was commenced by Complaint filed on April 5, 2012. The Complaint contains two counts: Count One is for breach of the insurance contract and Count Two is for statutory bad faith. Both counts center on Erie's refusal to pay the insurance claim under the Policy.

Erie filed its Answer and New Matter on August 30, 2012, in which it averred, *inter alia*, that Plaintiffs' breach of insurance contract claim is barred by the Policy's one-year contractual limitation on the filing of lawsuits.[4] (*See* Defendant's Answer and

---

[3]Plaintiffs were also aware of the one-year suit limitation for the breach of contract claim because they averred in the Complaint that "[Erie] . . . induced the plaintiffs to believe that [Erie] was investigating plaintiffs' claim" and that "[as] a result of the actions of [Erie], plaintiffs believed that they had additional time than what is provided in the Policy to initiate a lawsuit against [Erie] for breach of coverage and other claims." (*See* Complaint at ¶¶ 8 &10.)

[4]Count Two for bad faith is not barred by the Policy's one-year suit limitation clause. *See* **March v. Paradise Mutual Insurance Co.**, 435 Pa. Super. 597, 601-02, 646 A.2d 1254, 1256 (1994). *See also* **Ash v. Continental Insurance Co.**, 593 Pa. 523, 536, 932 A.2d 877, 885 (2007). Moreover, pursuant to a stipulation of the parties and Order of Court dated May 23, 2012, "[a]ll further pleadings, discovery, motions and trial or arbitration regarding Count Two of the Complaint, the bad faith claim, are stayed and shall only commence after a settlement, final verdict or final arbitration award with respect to Plaintiffs' claim for coverage and breach of contract, Count One of the Complaint." (Order of May 23, 2012, at ¶ 5.)

4

New Matter at ¶¶ 22-24 & 31.) On September 27, 2012, Plaintiffs filed a reply to the new matter alleging that Erie waived or, by its conduct, is estopped from enforcing the contractual suit limitation clause in the policy. Specifically, Plaintiffs averred that "[a]s a result of the actions of [Erie]," including the scheduling of Plaintiffs' EUOs after the one-year period and Erie's failure to ever deny the claim for insurance coverage, "[they] believed that they had additional time than what is provided in the Policy to initiate a lawsuit against [Erie]." (*See* Plaintiffs' Answer to New Matter at ¶ 31; *see also* Complaint at ¶ 10.)

On April 28, 2014, Erie filed the instant motion for summary judgment based upon Plaintiffs' failure to establish any basis for waiver or estoppel against Erie's assertion of the defense of the one-year suit limitation as found within the Policy. Following the filing of briefs and oral argument of counsel, this matter is now ripe for disposition.

## II. Discussion

### A. Summary Judgment Standard of Review

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after relevant discovery has been completed. **Miller v. Sacred Heart Hospital**, 753 A.2d 829, 833 (Pa. Super. 2000). Summary judgment is properly granted as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

5

(2)    if, after the completion of discovery relevant to the motion. . ., an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa. R.C.P. 1035.2. The adverse party who bears the burden of proof at trial must come forward with evidence essential to preserve his or her cause of action. Id., Note. If such a party fails to produce such essential evidence, the moving party is entitled to judgment as a matter of law. **Grandelli v. Methodist Hospital**, 777 A.2d 1138, 1143-44 (Pa. Super. 2001). However, "[the court] will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Evans v. Sodexho**, 946 A.2d 733, 738 (Pa. Super. 2008) (quotation omitted).

## B.    Statute of Limitations

Count One of Plaintiffs' Complaint is a claim for breach of insurance contract. Plaintiffs contend that Erie breached its duty to provide coverage for Plaintiffs' loss, as required under the Policy. Erie counters that Plaintiffs' suit was not timely filed under the terms of the Policy and that Plaintiffs have failed to establish any basis for waiver or estoppel against Defendant's assertion of the defense of the one-year suit limitation.[5]

---

[5]As noted above, Erie raised the suit limitation provision via new matter in its answer to Plaintiffs' Complaint. (*See* Answer and New Matter at ¶¶ 22-24). Plaintiffs replied to Erie's new matter, asserting the defenses of waiver and/or estoppel. (*See* Plaintiffs' Answer to Defendant's New Matter at ¶ 31.) Hence, the parties' affirmative defenses were properly preserved. *See* Pa. R.C.P. 1032(a). *See also* **Prime Medica Associates v. Valley Forge Insurance Co.**, 970 A.2d 1149, 1156 (Pa. Super. 2009).

6

The interpretation of an insurance policy is a question of law that a court may resolve on a motion for summary judgment. **Erie Insurance Exchange v. Baker**, 601 Pa. 355, 362, 972 A.2d 507, 511 (2009). When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. Id. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. Id.

Plaintiffs' fire insurance policy contains a clear and unambiguous one-year limitation on filing suits against Erie after the loss or damage occurs. Our Legislature, in fact, has mandated that all fire insurance policies issued in this Commonwealth contain such a one-year suit limitation clause:

> . . . [N]o insurance company, association or exchange shall issue a policy affording fire insurance . . . on property in this Commonwealth, unless such policy contains the following provisions as to such insurance:
>
> . . .
>
> **Suit.** *No suit or action on this policy for the recovery of any claim shall be sustainable* in any court of law or equity unless all the requirements of this policy shall have been complied with, and *unless commenced within twelve months next after inception of the loss.*

40 P.S. § 636(2) (emphasis added). The validity of the one-year limitation of suit provision in fire insurance policies has been consistently upheld by Pennsylvania Courts. See, *for example*, **Schreiber v. Pennsylvania Lumberman's Mutual Insurance Co.**, 498 Pa. 21, 24, 444 A.2d 647, 649 (1982) (the statutory requirement "represents a legislative determination of a reasonable period within which suits must be brought, a careful balancing of the interests of both insurers and insureds"); **General State Authority v. Planet Insurance Co.**, 464 Pa. 162, 165-66, 346 A.2d 265, 267

7

(1975) ("The law is clear that such a clause, setting time limits on the commencement of suits to recovery on a policy, is valid and will be sustained."); **Lardas v. Underwriters Insurance Co.**, 426 Pa. 47, 50, 231 A.2d 740, 741 (1967) (such a clause is "valid and reasonable"); **Petraglia v. American Motorists Insurance Co.**, 284 Pa. Super. 1, 4-5, 424 A.2d 1360, 1362 (1981), *aff'd*, 498 Pa. 32, 444 A.2d 653 (1982) (same).

Despite the seemingly unequivocal language of these cases, however, the Pennsylvania Supreme Court has recognized that failure to bring a suit to compel payment of fire insurance benefits within one year of loss does not *per se* prevent judicial consideration of the suit. In **Lardas**, the Court reached the merits of an insured's claim that the insurer had waived its right to rely on the suit limitation provision, or was estopped from doing so. 426 Pa. at 52-53, 231 A.2d at 742. Similarly, in **General State Authority**, the Court explicitly held that an insured could excuse his failure to file suit within one year of loss by proving facts constituting waiver or estoppel. 464 Pa. at 165 n.6, 346 A.2d 267 n.6. These cases hold that a court, in order to prevent injustice, need not strictly observe the suit limitation clause when "conduct or action on the part of the insurer is responsible for the insured's failure to comply in time." Id. at 168, 346 A.2d at 268. *See also* **Commonwealth v. Transamerica Insurance Co.**, 462 Pa. 268, 274, 341 A.2d 74, 77 (1975) ("a provision of this nature may be extended or waived where the actions of the insurer leads the insured to believe the limitation period will not be relied upon"); **McMeekin v. Prudential Life Insurance Company of America**, 348 Pa. 568, 571-72, 36 A.2d 430,

431-32 (1944) (where an insurer induces its insured not to sue within the contractual limitations period, the insurer cannot claim the benefit of the limitations period).

Our Superior Court has recognized that "[t]he terms 'waiver' and 'estoppel' have come to have their own special meaning in the context of insurance law":

> Some confusion has resulted from a careless and, perhaps, not wholly accurate use in the decisions of the words 'waived' and 'waiver' in connection with the clause in the policy limiting the time within which an action may be brought upon it, when what was really meant was such conduct on the part of the insurer or its authorized representatives as to excuse the insured from strict compliance with the terms of the policy and to extend the period for bringing suit. . . . Undoubtedly there may be an express waiver of the limitation of suit clause in the policy, and, when there is such a definite waiver, it is no longer in force and thereafter the statutory limitation as to contracts applies; but our Supreme Court has ruled that, when the insured seeks to excuse his failure to bring suit within the period of time fixed in the policy by conduct of the insurer which misled the insured to his injury – the failure of the insured to bring suit within the prescribed time being due to the insurer's act or conduct – the limitation has not been fully and completely waived, in the strict sense of the word, but has only been suspended or extended, and begins to run when the insurer's conduct no longer excuses the insured's failure to bring suit.

**Diamon v. Penn Mutual Fire Insurance Co.**, 247 Pa. Super. 534, 539-40, 372 A.2d 1218, 1220-21 (1977) (*quoting* **O'Connor v. Allemania Fire Insurance Co.**, 128 Pa. Super. 336, 339-40, 194 A. 217, 218-19 (1937)). The determination of whether waiver or estoppel has occurred is a conclusion of law. *See, generally,* **In re Estate of Salus**, 421 Pa. Super. 87, 95, 617 A.2d 737, 740-41 (1992).

Here, it is undisputed that Plaintiffs' suit was filed more than one year after the loss. Plaintiffs' loss occurred on April 9, 2010, and suit was commenced on April 5, 2012, almost two years later. Because a one-year suit limitation clause is valid and enforceable, **General State Authority**, 464 Pa. at 165-66, 346 A.2d at 267, unless Erie

9

has waived or, by its conduct, is estopped from enforcing the Policy's contractual limitations, Plaintiffs' claim is untimely and cannot proceed.

It is fundamental, however, that Plaintiffs must present a factual basis to support a finding of waiver or estoppel. **Lardas**, 426 Pa. at 52, 231 A.2d at 742. From my review of the record, I must conclude that Plaintiffs have not demonstrated the existence of a material issue of triable fact which would support such an allegation.

Plaintiffs claim that Defendant is equitably estopped from enforcing the state-mandated contractual limitations clause because of the representations made in the April 12 Letter which advised Plaintiffs that "[w]hen the coverage question is resolved," they would be "notified accordingly," and in the July 12 Letter which specifically reserved the rights of the Reinharts. (*See* Plaintiffs' Brief contra Erie's Motion at 9.) With respect to the April 12 Letter, Plaintiffs concede that the letter advised them of the Policy's one-year limitations period for bringing suit and further stated that "this is a preliminary letter that *may* be updated after additional investigation is completed." (*See* Defendant's Motion for Summary Judgment, Exhibit "D.") There is simply nothing in the April 12 Letter that would give Plaintiffs "reasonable grounds for believing that the time limit would be extended or that such provision would not be strictly enforced." **McMeekin**, 348 Pa. at 572, 36 A.2d at 432.

In comparison, the July 12 Letter did not quote the suit limitations terms of the Policy. However, this letter did emphasize that the "investigation and evaluation undertaken by Erie is being conducted under a full reservation of its rights." (*See* Plaintiffs' Brief contra Erie's Motion, Exhibit "E.") Erie explained that "[t]he phrase

10

'reservation of rights' means that the rights *of the insured and those of Erie*, under the policy and applicable law, are fully reserved and any such action taken during the investigation and evaluation of this matter *should not be deemed a waiver or estoppel to assert any such right.*" (Id. (emphasis added).)

Plaintiffs argue that this letter "led the Plaintiffs to believe that their rights were fully reserved, and they were not required to take any action until Erie's investigation of the loss was completed."[6] (Plaintiffs' Brief contra Erie's Motion at 6; *see also* Id., Exhibit "F" at ¶ 5.) Erie contends that "[i]nterpreting this language in the manner suggested by the Plaintiffs leads to an absurd result." (Defendant's Reply Brief at 3.) Under Plaintiffs' interpretation, "Erie's notice to the Plaintiffs *that it was fully reserving its rights* under the policy, and that its actions in investigating and evaluating the claim should not be deemed a waiver of its rights, *acted as a waiver of its rights* under the policy to enforce the one-year contractual limitations period." (Id. (emphasis in original).) I must agree with Erie that the notion that a reservation of rights acted as a waiver of rights is self-contradictory. Plaintiffs, who were represented at the time by counsel[7] and a public adjuster, cannot establish that this July 12 Letter gave them the requisite "reasonable grounds for believing that the time limit would be extended or that such provision would

---

[6] Erie was investigating the possibility that the subject fire at Plaintiffs' home was intentionally set by or at the direction of one or both of the Plaintiffs. (*See* Defendant's New Matter at ¶¶ 25-26, 30.)

[7] Plaintiffs admitted in their Answers to Erie's Request for Admissions that they were "represented by legal counsel with respect to the [Insurance] Claim on or before April 11, 2011," though it was not present counsel. (*See* Defendant's Motion for Summary Judgment, Exhibit "C" at ¶19.) Plaintiff Nicholas Reinhart avers in his Affidavit in Opposition to Defendant's Motion that he was being advised by Attorneys Mike Malloy and A. Leo Sereni on this insurance claim. (*See* Plaintiffs' Brief contra Erie's Motion, Exhibit "F" at ¶ 8.)

not be strictly enforced." **McMeekin**, 348 Pa. at 572, 36 A.2d at 432.

In addition to the estoppel arguments, Plaintiffs contend that certain conduct on the part of Erie constituted a clear waiver of any requirement that suit had to be commenced within one year of the date of the fire. (*See* Plaintiffs' Brief contra Erie's Motion at 10.) Specifically, Plaintiffs observe that Erie took the EUO of Mrs. Reinhart more than six months after the one-year statute of limitations period expired, and conducted Mr. Reinhart's EUO more than one year after the limitations period expired and seven days after Plaintiffs filed their Complaint. (Id., Exhibit "F" at ¶ 9; *see also* Complaint at ¶ 9.)

Erie argues that Plaintiffs, who were represented by counsel, could not, as a matter of law, have been misled to their prejudice that Erie intended to waive the contractual limitations period for filing suit, as these alleged actions supporting a waiver occurred *after* the limitations period expired. For, as our Superior Court has cautioned, "waiver or estoppel [is] only effective during such time as the plaintiff was led by reason of such statements to postpone his action." **Collins v. Home Insurance Co.**, 110 Pa. Super. 72, 82, 167 A. 621, 625 (1933). Clearly, the actions of Erie taken *after* the limitations period had expired could not have caused Plaintiffs to miss the limitations period.

This Court further agrees with the reasoning of its sister court in Schuylkill County that as a matter of public policy it would be counterproductive to find that actions take by an insurance company to resolve a matter after the expiration of the limitations period would constitute a waiver of the suit limitations period:

Finally, as a matter of public policy, we note that should a Court adopt a legal standard that holds that a Defendant insurance company's willingness to discuss a Plaintiff's claim subsequent to the expiration of a suit limitation period constitutes a waiver of said suit limitation period defense, then the Court has precluded any discussions with regard to the possible settlement of a claim in the Plaintiff's favor subsequent to the running of the limitation period. Under the constraints of that legal standard, no insurance company would ever enter into any discussion, correspondence, or communication, at the risk of waiving such a contract provision. Such a legal standard would therefore deprive a Plaintiff of another method of consideration for his claim. Moreover, a Plaintiff suffers no prejudice when a Defendant discusses a settlement subsequent to the expiration of the suit limitation period because the period has already expired. Therefore, we hold that the Defendant did not waive the suit limitation defense by agreeing to review estimates and photographs subsequent to the expiration of the suit limitation period. As a matter of public policy it would be counterproductive to rule otherwise. Phrased differently, it would be tantamount to propounding a legal doctrine to the effect that 'nice guys finish last.'

**Chiglinsky v. Erie Insurance Group**, 102 Sch. L.R. 1 (Domalakes, J., Aug. 24, 2005).

There is simply no evidence in the record that Plaintiffs' failure to comply with the one-year suit limitation clause was induced by the actions of the insurer, Erie. The record does contain the affidavit of Nicholas Reinhart which avers that his attorneys "Mike Malloy, as well as A. Leo Sereni . . . expressed their belief to [him] that Erie was still considering whether it would provide coverage through the time [he] filed the Complaint against Erie on April 5, 2012." (Plaintiffs' Brief contra Erie's Motion, Exhibit "F" at ¶ 8.) This affidavit establishes only that it was Plaintiffs' counsel, rather than Erie, who may have induced Plaintiffs to sit on their rights. This Court cannot hold Erie responsible for the alleged statements of Mr. Reinhart's counsel.

Alternatively, Plaintiffs make an argument regarding ripeness and aver that the limitations period for the contract claim could not commence until Erie denied the claim,

thus, resulting in damages to Plaintiffs. As noted above, Pennsylvania law requires insurance policies covering loss by fire to include a provision that states: "No suit or action . . . shall be sustainable in any court of law or equity unless . . . commenced within twelve months next after *inception of the loss*." 40 P.S. § 636(2) (emphasis added). Plaintiffs claim Erie re-wrote that language and expanded the limitations period because the Policy provides: "Suit must be brought within one year . . . after the loss *or damage* occurs." Plaintiffs interpret the word "damage" to mean damages from a breach of contract.[8]

It is Plaintiffs' assertion that by adding the term "or damage," Erie acknowledged there can be two different accrual dates for causes of action arising from the same occurrence under the Policy. Here, according to Plaintiffs, the "loss" occurred on the date of the fire, but the "damage" has not yet occurred because Erie has yet to deny their claim. (*See* Plaintiffs' Brief contra Erie's Motion at 10-11.) Since Erie had not notified Plaintiffs of its coverage decision as of the one-year suit limitations date, April 8, 2011, Plaintiffs contend that had they run into court and sued for breach of contract, Erie would have claimed the suit was not ripe because Plaintiffs had sustained no damages. (Id. at 10.)

This Court is not convinced that the difference in policy language is significant. Plaintiffs cite no case which makes the distinction they urge. Moreover, the Pennsylvania Supreme Court in a similar circumstance rejected the argument that the

---

[8]"Three elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." **Omicron Systems v. Weiner**, 860 A.2d 554 (Pa. Super. 2004).

14

limitations period for claims of breach of insurance contracts does not begin to run until the carrier denies a claim. *See* **Guiton v. Pennsylvania National Mutual Casualty Insurance Co.**, 503 Pa. 547, 549, 469 A.2d 1388 (1983) (in considering a breach of contract action for failure to pay benefits under the No Fault Motor Vehicle Insurance Act, the Supreme Court held that "the Superior Court erred in concluding the statute of limitations commences running from the date the insurer refuses payment under the contract of insurance," because the statue of limitations begins to run from the "date of the obligation").

Furthermore, in reading the Policy as a whole, it is clear that the phrase "loss or damage" in the one-year suit limitation clause refers to physical loss or damage to the home and/or its contents, not to the legal liability arising from such an occurrence. The Policy uses the words "loss" and "damage" throughout according to their standard, colloquial meanings, and in ways that would be inconsistent with Plaintiffs' term-of-art interpretation.[9] For instance, the Policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use [or] loss of use of tangible property which is not physically injured or destroyed." (Defendant's Motion for Summary Judgment, Exhibit "A" at 5.) Further, the Policy is replete with similar uses of the phrase "loss or damage" that are consistent with a physical-harm meaning and inconsistent with a legal-liability meaning, as suggested by Plaintiffs. For example, "RIGHTS AND DUTIES – CONDITIONS – SECTION I," subsection (8) "LOSS SETTLEMENT" states: "You may disregard the replacement cost provision and make

---

[9]Indeed, the Policy uses plain language throughout, avoiding terms of art wherever possible, including referring to the insureds as "you" and the insurer as "we."

15

claim for *loss or damage* to buildings on an actual cash value basis." (Id. at 12 (emphasis added).) This subsection further states: "When the replacement cost for the entire loss is more than $2500, we will not pay more than the actual cash value for the *loss or damage* until actual repair or replacement is completed." (Id. at 13 (emphasis added).) Also, the "WHAT WE ALSO PAY" section of the "Limited Fungi, Wet or Dry Rot or Bacteria Coverage Endorsement" contains the following language: "The coverage provided above is the only coverage . . . for *damage or loss* caused by, resulting from, or consisting of fungi, wet or dry rot, or bacteria . . . ." (Id., "Limited Fungi, Wet or Dry Rot or Bacteria Coverage Endorsement" at 1 (emphasis added).) This subsection continues: "If there is covered *loss or damage* to covered property, not caused by fungi, wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage. . . ." (Id. at 2 (emphasis added).)

Similarly, the "Farm Property Coverage Endorsement – Special Form" includes several references to the phrase "loss or damage" in the "WHAT WE DO NOT COVER – EXCLUSIONS" section:

> We will not pay for *loss or damage* to any farm personal property.
> We will not pay for *loss or damage* to buildings or structures caused by or resulting from:
> 1. fire, if that *loss or damage* is sustained to buildings as a result of using open fire for curing or drying tobacco in a barn . . .
>
> . . .
>
> 9. any of the following occurrences, if they take place in buildings or structures . . . .
> But this exclusion does not apply to *loss or damage* caused by explosion of gases or fuel within the furnace of any fired vessel. . . .
>
> . . .

16

15. artificially generated electric currents. . . .
But, if loss by fire results, we will pay for that resulting *loss or damage*.

. . .

17. . . . But if *loss or damage* by the specified causes of loss or building glass breakage results, we will pay that resulting *loss or damage*. . . . But we will not pay for *loss of or damage to* the system or appliance from which the water escaped.

(Defendant's Motion for Summary Judgment, Exhibit "A," "Farm Property Coverage Endorsement – Special Form" at 1 (emphasis added).) The "RIGHTS AND DUTIES" section of the Farm Endorsement also provides:

We will not pay more for *loss or damage* on a Functional Replacement Cost basis than the least of:
a) the amount of insurance applicable to the *lost or damaged* property;
b) the cost to replace . . . the *lost or damaged* property . . .; or
c) the amount you actually spend that is necessary to repair or replace the *lost or damaged* property.

(Id. at 4 (emphasis added).)

Lastly, the "Personal Articles Coverage Endorsement" also makes several references to "loss or damage." For example:

OUR PROMISE
We will cover the described property against all risks of *loss or damage* anywhere in the world.

DEDUCTIBLE
Each claim for *loss or damage* will be adjusted separately and from the amount of each adjusted claim the sum shown on the Declarations will be deducted. . . .

(Defendant's Motion for Summary Judgment, Exhibit "A," "Personal Articles Coverage Endorsement" at 1 (emphasis added).)

When the Court reviews the Policy as a whole, it is beyond any reasonable dispute that the phrase "after the loss or damage occurs" must refer to "loss or damage

17

to insured property." It must therefore refer to the physical harm to the home and/or its contents, as it would make no sense to speak of damages in the form of legal liability *to* the insured property.

Plaintiffs alternatively argue that the Policy in this case is ambiguous in that it required suit within one year "after the loss *or damage* occurs" without defining "damage," and, therefore, the Policy should be construed in favor of the insured and against Defendant. It is correct that ambiguities in an insurance policy should be construed in favor of the insured and against the drafter of the agreement, provided no strained or distorted constructions of the policy are adopted which would be at odds with the parties' intent or the Legislature's intent. *See* **Madison Construction Co. v. The Harleysville Mutual Insurance Co.**, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999); **Neuhard v. Travelers Insurance Co.**, 831 A.2d 602, 605 (Pa. Super. 2003). However, the Policy here is not ambiguous, and to interpret "loss" and "damage" as having such differing meanings under the Policy would place a strained construction on the Policy terms, would lead to absurd results, and would thwart the intent of the drafters of 40 P.S. § 636(2).

An ambiguity exists when a policy provision is "reasonably susceptible of different constructions and capable of being understood in more than one sense." **Madison**, 557 Pa. at 606, 735 A.2d at 106. This is not a case where the clause "date of loss or damage" is susceptible to more than one interpretation. The Policy provides that the limitations clause runs from the "date of loss or damage." In construing this Policy, reading the contract as a single document and considering the Policy as a

18

whole, the Policy provisions set out above establish that the terms "loss" and "damage" are used interchangeably throughout the Policy and have one and the same meaning. The Court is compelled to find that the suit limitations clause runs from the date the loss insured against occurred. In this case, the date of loss is clearly the date of the fire on April 9, 2010. This conclusion is supported by numerous decisions of the Pennsylvania appellate courts, which have held that "date of loss" and "date of damage" provisions mean that the one-year limitation clause "runs from the date of the occurrence of the destructive event or casualty insured against." **General State Authority**, 464 Pa. at 166, 346 A.2d at 267-68 (*citing* **Lardas**, *supra*; **Abolin v. Farmers American Mutual Fire Insurance Co. of Bucks County**, 100 Pa. Super. 433, 435 (1930)).

This Court must reject Plaintiffs' argument that the inclusion of the phrase "or damage" in the limitation provision of the Policy creates additional rights for the insured. To rule otherwise would directly contravene the clear intent of the Legislature in enacting 40 P.S. § 636(2). If no "damage" occurs until the insurer unequivocally denies the claim, as argued by Plaintiffs on brief, the intent of 40 P.S. § 636(2) to have all suits relating to fire losses filed within one year of the fire would be effectively nullified.

Here, the fire loss occurred on April 9, 2010, and Plaintiffs did not commence the instant action until April 5, 2012. Because almost 24 months passed after the fire loss before Plaintiffs initiated the instant action, this action is untimely. Plaintiffs' contention that they were induced by Erie's actions to delay bringing suit is not supported by the record before me. There is simply no evidence of waiver or estoppel under a strict contractual analysis. Plaintiffs had no "reasonable grounds for believing that the time

19

limit would be extended or that such provision would not be strictly enforced. . . ."

**Petraglia**, 284 Pa. Super. at 9, 424 A.2d at 1364 (*quoting* **McMeekin**, 36 A.2d at 432).

### III.    Conclusion

For the reasons set forth above, I find that Plaintiffs' claim for breach of insurance contract (Count One of the Complaint) is barred by the Policy's one-year suit limitation clause. Therefore, Erie's motion for summary judgment will be granted as to Count One.

Accordingly, I enter the following Order:

20

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

NICHOLAS and DENISE REINHART     :

          v.                  :      No. CI-12-04806

ERIE INSURANCE EXCHANGE        :

### ORDER

AND NOW, this 26th day of August, 2014, upon consideration of Defendant Erie

Insurance Exchange's Motion for Summary Judgment, the response of Plaintiffs

Nicholas and Denise Reinhart, the briefs filed by the parties, and oral argument of

counsel, it is hereby ORDERED that said Motion is GRANTED and Count One of

Plaintiffs' Complaint (Breach of Contract) is DISMISSED WITH PREJUDICE.

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 8 -27-14

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

ATTEST:

Copies to:    Alan C. Milstein, Esquire, Sherman, Silverstein, Kohl, Rose & Podolsky,
P.A., East Gate Center, 308 Harper Drive, Suite 200, Moorestown,
NJ 08057

John A. Statler, Esquire, Johnson, Duffie, Stewart & Weidner, 301 Market
Street, P.O. Box 109, Lemoyne, PA 17043-0109