**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4363
_____

HOLY GHOST CARPATHO-RUSSIAN GREEK CATHOLIC
(ORTHODOX) CHURCH OF THE EASTERN RITE OF PHOENIXVILLE,
PENNSYLVANIA, also known as Holy Ghost Church; ST. NICHOLAS
BROTHERHOOD OF PHOENIXVILLE, PA, INC.; JOHN BILANIN; ALEX BRENO;
MICHAEL KOST; JOHN ELY; MARK SAMILENKO; JEANNE BASS,

Appellants

v.

CHURCH MUTUAL INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 11-cv-01800)
District Judge: Hon. Cynthia M. Rufe
_____

Submitted Under Third Circuit LAR 34.1(a)
July 10, 2012

Before:  FUENTES, HARDIMAN, and ROTH, *Circuit Judges*.

(Filed: July 30, 2012)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

The Holy Ghost Carpatho-Russian Greek Catholic Church of the Eastern Rite of Phoenixville, Pennsylvania (Church), the St. Nicholas Brotherhood of Phoenixville (Brotherhood), and Church officers John Bilanin, Alex Breno, Michael Kost, John Ely, Mark Samilenko, and Jeanne Bass (individual Appellants) appeal the District Court's dismissal of their claim against the Church Mutual Insurance Company (Church Mutual). We will affirm, largely for the reasons stated by the District Court.

I

Because we write for the parties, who are well acquainted with the case, we recite only the essential facts and procedural history.

A

In 1937, Church parishioners purchased property in Phoenixville, Pennsylvania. The following year, they established the Brotherhood as a non-profit organization that would hold title to the property to ensure that the land was used only for Church purposes. In 1941, the Brotherhood leased the parcel to the Church for a term of ninety-nine years.

In 2008, a majority of parishioners voted to approve the Church's plan to sell a portion of the property to a third party. By that year, all of the Brotherhood's original directors were deceased except for Joseph Orosz, and no successors had been elected. In July 2008, the Church sued the Brotherhood in state court, seeking to quiet title to a portion of the parcel in the name of the Church and pursuing a decree that the Church

2

could act on the Brotherhood's behalf.  The complaint was dismissed with prejudice.

In December 2008, after electing themselves directors and officers of the Brotherhood without Orosz's knowledge, the individual Appellants announced to Church parishioners that the Brotherhood's board of directors and the Church's board of directors were one and the same.  Six months later, the newly constituted Brotherhood executed an agreement of sale for a portion of the Phoenixville property and granted an easement to a utilities provider.

Refusing to recognize the newly constituted Brotherhood, Orosz appointed Mary Anne Bradford to replace him as director of the original organization.  In July 2009, Bradford filed suit on behalf of the original Brotherhood against the individual Appellants in the Court of Common Pleas of Chester County, Pennsylvania, alleging that both the property sale and the easement were illegal.  After reviewing the Church's bylaws, the court deemed the Brotherhood led by Bradford a nullity and found that, because the Brotherhood's board of directors and the Church's board of directors were identical, the newly constituted Brotherhood's decision to sell the property was binding.

B

Appellants possess insurance coverage under two multi-peril policies issued to the Brotherhood and the Church, respectively, and under an umbrella liability policy issued to the Church.[1]  Both multi-peril policies include the same coverage for directors and

---

[1] Appellants concede that the umbrella policy is not relevant to this appeal.

officers (D&O Coverage), obligating Church Mutual to "pay on [the insured's] behalf those sums that any of [the insured's] 'Directors, Officers or Trustees' become legally obligated to pay for 'loss' arising from any claim or claims because of injury arising out of a 'wrongful act' to which this insurance applies," and giving Church Mutual "the right and duty to defend the insured against any 'suit' seeking payment for 'loss' and to pay for the 'defense expenses.'" Both policies exclude from D&O Coverage "[a]ny claim involving title to the Named Insured's property," and limit defense coverage to $25,000 in lawsuits filed against the insured by affiliated entities.

After Church Mutual paid $25,000 for the defense of the Brotherhood's 2009 suit and refused to pay more, Appellants sued the insurer in the District Court, seeking declaratory relief and payment of additional defense costs. In November 2011, the District Court granted Church Mutual's motion to dismiss. This timely appeal followed.

II

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over appeals from a final decision of a district court under 28 U.S.C. § 1291. Our review of a district court's grant of a motion to dismiss is plenary. *E.g.*, *Grier v. Klem*, 591 F.3d 671, 676 (3d Cir. 2010). "When considering an appeal from a dismissal of a complaint pursuant to Rule 12(b)(6), we accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn from them and view them in the light most favorable to the nonmoving party." *AT&T Corp. v. JMC Telecom,*

4

*LLC*, 470 F.3d 525, 530 (3d Cir. 2006).

In Pennsylvania, "the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006); *accord Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94, 99 (Pa. Super. Ct. 1994) ("It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend."). Accordingly, we must compare the terms of the two multi-peril policies with the allegations set forth in the 2009 complaint.

## A

We agree with the District Court that, because the Brotherhood was the named plaintiff in the 2009 complaint and because the Brotherhood's policy does not cover litigation costs incurred by an insured who brings a lawsuit as a plaintiff, the Brotherhood's Church Mutual policy does not provide coverage here. Appellants do not challenge the District Court's interpretation of the policy, arguing instead that the 2009 action was initiated not by the Brotherhood but by a group misrepresenting itself as the Brotherhood, an allegation they say the District Court should have accepted as true because it was set forth in their federal complaint.

Appellants confuse the standard applicable to a motion to dismiss with the standard used in assessing an insurer's duty to defend. To determine Church Mutual's

5

duty to defend the Brotherhood, we may look only to the 2009 complaint, not to the state court's findings of fact or conclusions of law or to Appellants' federal complaint. In short, because the Brotherhood was the sole named plaintiff in the 2009 complaint, the multi-peril policy issued to the Brotherhood is not applicable.

B

We now turn to the multi-peril policy issued to the Church. That policy's Affiliated Entity provision, which modifies D&O Coverage in affiliated-entity disputes, provides:

> We will pay on your behalf and on behalf of your "Directors, Officers or Trustees" "defense expenses" (but no other item of any "loss") that you or your "Directors, Officers or Trustees" become legally obligated to pay arising out of a "wrongful act" that results in a claim or claims made against you or your "Directors, Officers or Trustees" by an "Affiliated Entity" that alleges one or more "Affiliated Entity Disputes." The limits of insurance shown in the Declarations Page and the rules below fix the most we will pay for "Affiliated Entity Dispute" "defense expenses."

The policy then defines an "Affiliated Entity" as "any entity or organization with which the Named Insured is affiliated or associated, or which the Named Insured governs or is governed by, owns or is owned by, controls or is controlled by." An "'Affiliated Entity Dispute' means any claim or claims made against an insured by an 'Affiliated Entity' that arises out of a dispute involving," *inter alia,* "[t]he appointment or election of 'Directors, Officers or Trustees' or other positions" or "[t]he interpretation or application of articles of incorporation, charters, association agreements, constitutions, bylaws, or other governing documents, or any amendments thereto." Therefore, the extent of

6

Appellants' coverage under the Church's policy turns on whether, on its face, the 2009 action qualifies as an "Affiliated Entity Dispute" brought by an "Affiliated Entity." We hold that it does.

In recounting the history of the Brotherhood, the 2009 complaint notes that the Church's parishioners formed the organization for the purpose of holding title to the Phoenixville property and explains that the property was the Brotherhood's sole asset. The complaint alleges that the officers of the Brotherhood and the officers of the Church were originally one and the same. These and other details about the formation of the Brotherhood indicate that, based on the four corners of the complaint, the Brotherhood qualifies as an "entity or organization with which the [Church] is affiliated or associated." Furthermore, because the 2009 complaint frames the dispute as one concerning the appointment or election of Brotherhood officers, the action must be considered an "Affiliated Entity Dispute." As such, it falls within the ambit of the $25,000 coverage cap set forth in the Affiliated Entity Dispute exclusion to D&O Coverage. Church Mutual, which has already paid $25,000 to Appellants, has thus fulfilled its contractual duty to defend them.

## III

For the foregoing reasons, we will affirm the judgment of the District Court

7