NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2639
_____

MEGA CONSTRUCTION CORPORATION,
a New Jersey corporation,
                                        Appellant

v.

XL AMERICA GROUP, DBA Indian Harbor Insurance Group;
INTERSTATE FIRE & CASUALTY COMPANY;
SENECA SPECIALTY INSURANCE COMPANY;
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, DBA Travelers
Casualty & Surety of Illinois;
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, DBA Travelers
Indemnity Co of Connecticut;
ABC COMPANY 1-5, a fictitiously named insurance company,

v.

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, DBA
TRAVELERS CASUALTY & SURETY OF ILLINOIS,
TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA D/B/A/
TRAVELERS INDEMNITY COMPANY
OF CONNECTICUT,
                                        Third Party Plaintiff

v.

OHIO CASUALTY,
                                        Third Party Defendant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 3-13-cv-00233)

District Judge: Honorable Peter G. Sheridan
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 6, 2017

Before: CHAGARES, SCIRICA and FISHER, *Circuit Judges*.

(Filed: April 11, 2017)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

Mega Construction Corporation says the District Court was wrong to hold that Mega's insurers have no duty to defend or indemnify it against a shoddy-workmanship lawsuit filed in state court. We disagree and will affirm summary judgment for the insurers.

I.

Merion Construction Management, LLC subcontracted out carpentry and other work to Mega for a new apartment complex in Conshohocken, Pennsylvania. Mega purchased commercial general liability (or CGL) insurance from two insurers: Indian Harbor Insurance Company and Interstate Insurance Company. The Indian Harbor policy ran from May 2009 to May 2010; Interstate's ran from May 2010 to May 2011. Mega was also named as an additional insured in two of its subcontractees' CGL policies: one

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

with Seneca Specialty Insurance Company and the other through Travelers Casualty Insurance Company of America. All four policies required the insurers to defend against lawsuits seeking damages for "property damage" (physical injury to tangible property) caused by an "occurrence" (an accident).[1]

Water infiltration was discovered at the complex in June 2009. Merion blamed Mega for it in April 2010. Mega worked to fix the problem but it resurfaced six months later. Merion again blamed Mega, so Mega notified all four insurers of Merion's accusations.

The apartment complex was completed in late 2010 or early 2011. The owner, Washington Street Associates V, L.P., sold it for $77.7 million — $3.3 million less than the asking price. Blaming Mega's workmanship for the value diminution, Merion and Washington sued Mega in Pennsylvania state court alleging violations of the subcontracts and certain implied warranties. For damages, they asked for the difference between the complex's asking and sale prices.

Mega filed its own lawsuit against the insurers in New Jersey state court claiming they're required to defend it against the Pennsylvania suit. After removal to the District Court on diversity-jurisdiction grounds, the parties filed cross-motions for summary judgment. Rejecting Mega's argument that New Jersey law governs, the District Court

---

[1] App. 90–91.

applied Pennsylvania law, granted the insurers' motions, and denied Mega's. This timely appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have it under 28 U.S.C. § 1291. We review choice-of-law determinations and summary judgment orders *de novo*.[2] Summary judgment is warranted when the material facts aren't genuinely disputed and the movant is entitled to judgment as a matter of law.[3]

## III.

Mega says the District Court should have applied New Jersey law to this case, not Pennsylvania law. We disagree. Pennsylvania law governs and compels judgment for the insurers.[4]

A district court sitting in diversity looks to the choice-of-law rules of the state in which it sits.[5] So New Jersey's choice-of-law rules govern here. Under those rules we ask

---

[2] *Robeson Indus. Corp. v. Hartford Acc. & Indem. Co.*, 178 F.3d 160, 164–65 (3d Cir. 1999); *see Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 395 n.17 (3d Cir. 2016).

[3] *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

[4] Mega waived arguments for disturbing summary judgment for Seneca and Travelers by failing to raise them in its opening brief. *See, e.g.*, *Ross v. Gilhuly*, 755 F.3d 185, 192 n.11 (3d Cir. 2014). As Travelers puts it, Mega only "passingly" mentions Seneca and Travelers in its papers, Travelers Br. 11, and only says the District Court erred in its choice-of-law analysis on Indian Harbor and Interstate, *see, e.g.*, Mega Br. 9 ("Under New Jersey law, Indian Harbor and Interstate have a duty to defend and/or indemnify Mega.").

[5] *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 403 (3d Cir. 2016).

if Pennsylvania and New Jersey law differ on a "point in issue."[6] They do.  Pennsylvania courts say the "definition of 'accident' required to establish an 'occurrence'" under a CGL policy "*cannot* be satisfied by claims based upon faulty workmanship."[7] New Jersey courts say just about the opposite: Consequential harm caused by a subcontractor's "negligent work" *can* be a coverage-triggering "accident" under a CGL policy.[8]

When faced with a conflict, New Jersey courts apply the *Restatement (Second) of Conflict of Laws*.[9] *Restatement* § 193 is the "starting point" for choice-of-law disputes involving liability-insurance coverage.[10] That section says the law of the state that the parties understood to be the "principal location of the insured risk" governs unless some other state has a "more significant relationship" to the case under *Restatement* § 6.[11] An insured risk — namely an "activity" that is the "subject matter of the insurance" — is "principally located" in a state if it occurs there during a "major portion of the insurance period."[12]

---

[6] *Pfizer, Inc. v. Emps. Ins. of Wausau*, 712 A.2d 634, 640 (N.J. 1998) (internal quotation marks omitted).

[7] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 899 (Pa. 2006) (emphasis added).

[8] *Cypress Point Condo. Ass'n v. Adria Towers, LLC*, 143 A.3d 273, 288 (N.J. 2016).

[9] *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171–73 (3d Cir. 2011) (citing *Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co.*, 629 A.2d 885, 888 (N.J. 1993); *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 417 A.2d 488, 491–93 (N.J. 1980)).

[10] *Id.* at 173; *see* Restatement (Second) of Conflict of Laws § 193 cmt. a (1977).

[11] *Fogel*, 656 F.3d at 173 (internal quotation marks omitted).

[12] Restatement § 193 cmt. b; *see Gilbert*, 629 A.2d at 899.

The insured risk in this case — Mega's construction work — took place in Pennsylvania during much of the relevant coverage period, May 2009 to May 2011. During that time Mega worked alongside other contractors to construct the 300+-unit apartment complex in Pennsylvania. "Accidents" with potential to cause "property damage" at this project were going to occur at the construction site in Pennsylvania, not in New Jersey. Thus the parties reasonably understood Pennsylvania to be the insured risk's principal location. Pennsylvania law governs unless New Jersey has a more significant relationship under *Restatement* § 6.

Section 6 says we consider (a) the interstate system's needs; (b) the forum's relevant polices; (c) other interested states' relevant policies and interests in the issue at hand; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in determining and applying the law in issue. Mega says factors (a), (d), (e), (f), and (g) combine to compel application of the law of the state of contracting here — New Jersey law. Mega notes it entered into the Indian Harbor and Interstate policies there and performed its contractual duty to pay premiums there. Mega is also incorporated there and New Harbor and Interstate are licensed to do business there. Thus, says Mega, applying New Jersey law would foster "harmonious relationships" between the states and justify the parties' "reasonably objective expectations."[13]

---

[13] Mega Br. 17.

We don't think it would do either. We view Mega's claims like this: Mega says the insurers must defend and indemnify it against a lawsuit filed in Pennsylvania, by two Pennsylvania companies (Washington and Merion), who allege Pennsylvania causes of action and seek damages for the loss in value from the sale of property located in Pennsylvania, that was allegedly caused by Mega's faulty work done in Pennsylvania, under subcontracts entered into in Pennsylvania. In sum, Pennsylvania's relationship to this dispute is the more significant one. The District Court rightly applied that state's law.

Under Pennsylvania law Mega concedes defeat — and rightly so. Faulty-workmanship claims don't fall within the definition of an "'accident' required to establish an 'occurrence'" under a CGL policy in Pennsylvania.[14] The claims against Mega in the Pennsylvania suit allege exactly that: faulty workmanship violating the subcontracts. Mega's coverage claims fail as a matter of law. Summary judgment was warranted for the insurers.

## IV.

For these reasons, we'll affirm the District Court's order.

---

[14] *Kvaerner*, 908 A.2d at 899; *see* Mega Br. 11–12 (citing *Kvaerner* and other decisions applying it).